IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

            Plaintiff,

v.                          //   CIVIL ACTION NO. 1:16CV236
                                 (Judge Keeley)

RAYMOND HOBBS, ISAAC BERZIN,
ALANA McCAMMAN, SCOTT McCAMMAN,
DONALD KARNER, BRIAN WAIBEL,
JOY WAIBEL, ALGEM, LLC, DYNASEP, LLC,
ELECTRIC TRANSPORTATION ENGINEERING
CORP., ELEMENT CLEANTECH, INC.,
GREENFUEL TECHNOLOGIES CORPORATION,
OMNI ENGINEERING, PLLC,

            Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]

This case involves an alleged kickback scheme in violation of the Anti-Kickback Act, 41 U.S.C. §§ 8701, et seq., as well as the defendants' alleged submission of false or fraudulent claims in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

Pending before the Court is defendant Donald Karner's motion to dismiss for improper venue, lack of personal jurisdiction, and failure to state a claim or, in the alternative, motion to transfer venue (Dkt. No. 101). Defendants Brian Waibel, Joy Waibel, and Raymond Hobbs have joined Karner's motion (Dkt. Nos. 103, 104, and 105). For the reasons that follow, the Court **DENIES** the motion (Dkt. No. 101).

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]

### I. BACKGROUND[1]

Defendant Raymond Hobbs ("Hobbs") was an employee of Arizona Public Service Company ("APS")[2], which generated, transmitted, and distributed electricity to eleven Arizona counties. Its operations included limited exploration and implementation of renewable and sustainable energy alternatives. Hobbs was the principal investigator for two projects awarded to APS by the National Energy Technology Laboratory ("NETL").

The NETL is part of the Department of Energy ("DOE") national laboratory system, and is owned, operated, and funded by the DOE. The first project with which Hobbs was involved, NETL Award No. DE-FC26-06NT42759, involved the development of a hydro-gasification process for the co-production of substitute natural gas (the "CSNG Project"). The government's share of the CSNG Project was $15,000,000. The second project, NETL Award No. DE-FE0001099, involved developing an integrated energy system with beneficial carbon dioxide use (the "IES Project"). The government's share of

---

[1] The facts are taken from the Amended Complaint (Dkt. No. 97) filed by the government on June 21, 2017, which is the operative complaint in this action.

[2] APS is a wholly-owned subsidiary of Pinnacle West Capital Corporation ("Pinnacle"). Both entities are Arizona corporations and neither is a defendant in this action.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

the IES Project was $70,000,000. The NETL administered the Projects from its Morgantown, West Virginia, offices ("NETL-Morgantown").

In its amended complaint, the government alleges that defendants Algem, LLC, Dynasep, LLC, Electric Transportation Engineering Corporation, Element Cleantech, Inc., Greenfuel Technologies Corporation, and Omni Engineering, PLLC (collectively the "Entity Defendants") were prime contractors or subcontractors on the Projects. It further alleges that defendants Isaac Berzin, Alana McCamman, Scott McCamman, Raymond Hobbs, Donald Karner, Brian Waibel, and Joy Waibel (collectively the "Individual Defendants") were subcontractors or vendors on the Projects, or were employees of, or otherwise affiliated with, the Entity Defendants.

In his position as principal investigator for APS, Hobbs was primarily, if not exclusively, responsible for issuing purchase orders, entering into subcontracts, and authorizing payment of invoices generated by vendors and subcontractors. Around March of 2010, APS discovered "improprieties" related to the Projects, including insufficient supporting documentation and undisclosed conflicts of interest related to the administration of the Projects. APS determined that Hobbs was responsible for the improprieties, and it terminated his employment in March of 2010.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

APS also ordered an external audit and inquiry, following which it prepared a report and forwarded it to the DOE.

The government alleges that Hobbs received kickbacks from the Entity Defendants in return for issuing them subcontracts or purchase orders for the Projects, and that he approved invoices from the Entity Defendants based upon the kickbacks he received. The alleged kickbacks included cash payments, as well as employment for Hobbs' immediate family members or family members of his associates. According to the amended complaint, some or all of the payments made to the Entity Defendants could not be substantiated or verified as legitimate, and some claims for services contained within the invoices lacked supporting detail.

Finally, the government alleges that the defendants concealed the kickbacks through various means, including:

(a)  making payments to Hobbs in cash;

(b)  providing payments to Hobbs through subsidiary or unrelated entities that did not have direct contractual ties to APS or NETL;

(c)  using corporate entities to hide the fact that subcontractors were employing and paying members of the Hobbs family;

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

(d)    submitting invoices for lodging in the Landmark Towers
       condominium units, which were owned by Hobbs' son, to
       shroud the fact that the payments would benefit the Hobbs
       family; and

(e)    directing invoices to Hobbs, so that APS representatives
       could   not   question   unsupported   and   unsubstantiated
       services or the existence of conflicts of interest.

The government asserts that the kickback scheme violated the
Anti-Kickback Act ("AKA"), 41 U.S.C. §§ 8701, et seq., and caused
the knowing submission of false or fraudulent claims to NETL in
violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.
The Court has subject matter jurisdiction under 28 U.S.C. § 1345,
which provides that "the district courts shall have original
jurisdiction of all civil actions, suits or proceedings commenced
by the United States . . . ."

During a scheduling conference in the case on May 22, 2017,
the Court addressed with the parties the issues of personal
jurisdiction and venue. During the conference, the government
indicated that it intended to amend its complaint to more
adequately plead the basis for jurisdiction and venue. After the
government filed its amended complaint (Dkt. No. 97), defendant
Donald Karner ("Karner") filed a combined motion and memorandum to

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

dismiss for improper venue, lack of personal jurisdiction, and failure to state a claim, or to transfer venue (Dkt. No. 101). Individual defendants Brian Waibel, Joy Waibel, and Raymond Hobbs have filed notices of joinder in Karner's motion (Dkt. Nos. 103, 104, and 105).

## II. DISCUSSION

**A.    Motion to Dismiss**

Karner has moved to dismiss the amended complaint, arguing (1) that venue is improper, (2) that the Court does not have personal jurisdiction over him, and (3) that the government has failed to state a claim against him (Dkt. No. 101).

**1.    Improper Venue**

Pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406, Karner argues that venue in this district is improper, as the events giving rise to this action occurred almost exclusively in Arizona. Once a defendant objects to venue, the plaintiff bears the burden of establishing that venue is proper. See Alvarez v. Babik, 2014 WL 1123383, at *2 (N.D.W.Va. 2014) (Bailey, J.) (citing Plant Genetic Sys., N.V. v. Ciba Seeds, Mycogen Plant Sci., Inc., 933 F.Supp. 519, 526 (M.D.N.C. 1996) (citing in turn Bartholomew v. Va. Chiropractors Ass'n, Inc., 612 F.2d 812, 816 (4th Cir.1979))).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

Importantly, in the absence of an evidentiary hearing, a plaintiff need only present a prima facie showing of proper venue to survive a 12(b)(3) motion to dismiss. See Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004).

In this case, the government asserts claims for violations of the FCA, which contains its own venue statute:

> Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred. . . .

31 U.S.C. § 3732(a). The government does not allege that any defendant resides in West Virginia. The question presented therefore is whether any defendant transacts business in this district, or whether any of the acts proscribed by § 3729 occurred here.

### a.    Business Transactions

The FCA provides that "[a]ny action under section 3730 may be brought in any judicial district in which . . . any one defendant . . . transacts business." 31 U.S.C. § 3732(a). A plaintiff satisfies the FCA's venue provision if it is alleged that a defendant entered into business agreements in the district or visited the district to work on business projects. See, e.g., Pickens v. Kanawha River Towing, F.Supp. 702, 709 (S.D. Ohio 1996).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

Here, at least one defendant transacted business in the Northern District of West Virginia within the meaning of 31 U.S.C. § 3732(a).

The government alleges that, as part of the alleged kickback scheme, Hobbs awarded subcontracts to defendant Electrical Transportation Engineering Company ("ETEC"), a company controlled by Karner. According to the amended complaint, Karner was the President and CEO of ETEC, and was directly and extensively involved in the management and operation of the NETL Projects.

The government further alleges that defendant ETEC was the primary engineering firm for the CSNG Project and, therefore, frequently transacted business in the Northern District in connection with the Project. The government specifically alleges that ETEC management and personnel, including Karner in his role as Project Manager, routinely communicated with NETL personnel in Morgantown, West Virginia, regarding the CSNG Project, and also submitted invoices and claims for reimbursement directly to NETL in Morgantown. Importantly, the government further alleges that Karner traveled to Morgantown to meet with NETL personnel to discuss and work on the Project.[3]

---

[3] The government further alleges that defendant ETEC was the prime contractor on a third DOE project award through NETL (the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

Given these allegations, the Court concludes that the government has sufficiently alleged that at least one defendant in the case transacts business in the Northern District of West Virginia and, therefore, that venue is proper in this district.

### b. Acts Proscribed by § 3729

As stated above, the FCA venue statute further provides that an action under section 3730 may also be brought "in any judicial district in which . . in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a). Here, the amended complaint sufficiently alleges that at least one act proscribed by section 3729 occurred in the Northern District of West Virginia.

Under § 3729(a)(1)(A), a person is liable for an FCA violation if he or she "knowingly <u>presents</u>, or <u>causes to be presented</u>, a false or fraudulent claim for payment or approval" (emphasis added). In its amended complaint, the government specifically alleges that the defendants presented, or caused to be presented, false or fraudulent claims to NETL-Morgantown (Dkt. No. 97 at ¶¶ 3, 44, 48, 61, 62, 212). It further alleges that, in the absence of review and approval by NETL personnel in Morgantown, invoices and

---

"HICE Project"), which was not related to the CSNG or IES Projects, and that ETEC personnel traveled to Morgantown and had regular contracts with NETL personnel in connection with the HICE Project.

claims submitted as part of the Projects would not have been
processed or paid, that is, "funds from DOE would never have been
paid out to the defendants named herein or anyone else without the
direct involvement of NETL's Morgantown personnel" (Dkt. Nos. 97 at
¶ 62). Therefore, according to the amended complaint, Karner and
the other defendants did not present false or fraudulent claims, or
cause them to be presented, in Arizona, but rather, in Morgantown,
West Virginia.

In addition, under § 3729(a)(1)(B), a person is liable for an
FCA violation if he or she "knowingly makes, <u>uses</u>, or <u>causes to be</u>
made or <u>used</u>, a false record or statement material to a false or
fraudulent claim" (emphasis added). Here, the government alleges
that, in order to avoid suspicion, Hobbs and other defendants
"use[d]" "false record[s] or statement[s] material to" the
allegedly false or fraudulent claims to prevent NETL-Morgantown
from detecting the alleged kickbacks. In other words, the
government alleges that certain defendants "used" false records
(namely invoices), which were material to false claims presented to
NETL in Morgantown, by sending them, or causing them be sent, to
the Northern District of West Virginia with the intent they be used
to conceal kickbacks.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

For example, the amended complaint specifically alleges that companies, such as Energy, Flux, LLC and Radiant Services, LLC, were "use[d]" to hide the fact that subcontractors were employing and paying Hobbs' sons in claims that were presented to NETL-Morgantown. Similarly, the amended complaint alleges that invoices with claims for lodging in condominium units located Arizona, which were owned by Hobbs' son, were presented to NETL in Morgantown. It further alleges that the invoices falsely indicated that the units were owned by Impact E3 Foundation, a Florida corporation, and that these invoices were therefore "use[d]" to conceal from NETL that the payments would benefit the Hobbs family (Dkt. No. 97 at ¶¶ 61, 70, 73, 78, 79, 97, 134-41, 215).

Given the allegations in the amended complaint, the Court concludes that the government has sufficiently alleged that at least one act proscribed by section 3729 occurred in the Northern District of West Virginia. Because the amended complaint sufficiently alleges that at least one defendant transacts business in the Northern District of West Virginia, and that at least one act proscribed by 31 U.S.C. § 3729 occurred in the district, the Court concludes that the government has established a prima facie case that venue is appropriate. Having concluded that venue is

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

proper in this district under the FCA venue statute, the Court **DENIES** Karner's motion to dismiss on that ground.

### 2.   Lack of Personal Jurisdiction

Karner next contends that the Court does not have personal jurisdiction over him because he does not have sufficient minimum contacts with the state of West Virginia.

"As prerequisites to exercising personal jurisdiction over a defendant, a federal court must have [1] jurisdiction over the subject matter of the suit, [2] venue, [3] 'a constitutionally sufficient relationship between the defendant and the forum,' and [4] 'authorization for service of a summons on the person.'" ESAB Group v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir.1997) (quoting Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)).

First, the Court has subject matter jurisdiction over the suit because it arose "under the ... laws ... of the United States[,]" namely the AKA and the FCA. See 28 U.S.C. § 1331. Next, with respect to the authorization for service of a summons on the person, "Federal Rule of Civil Procedure 4(k)(1) provides that '[s]ervice of a summons or filing a waiver of service is effective to establish [a federal court's] jurisdiction over the person of a defendant' if such service is accomplished on a defendant whom the law has made amenable to the court's process." ESAB Group, 126 F.3d

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

at 622. Rule 4(k) provides "five sources authorizing service to effect in personam jurisdiction," one of which is a federal statute. Id. Here, section 3732(a) of the FCA provides that "[a] summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States." Because the defendants in this case were either served within the United States or have filed a waiver of service, service was valid.

Third, as discussed above, the FCA provides that, "in the case of multiple defendants," venue is appropriate in any judicial district where "any one defendant can be found, resides, transacts business, or in which any act proscribed by [31 U.S.C. § 3729] occurred." 31 U.S.C. § 3732(a). Because the Court has already determined that the amended complaint sufficiently alleges that at least one defendant transacts business in the Northern District of West Virginia, and that at least one act proscribed by 31 U.S.C. § 3729 was performed within the district, venue is proper.

Finally, a constitutionally sufficient relationship must exist between the defendant and the forum. ESAB Group, 126 F.3d at 622. To be permissible, defendants must typically "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316(1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Importantly, "[w]here Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant." Hogue v. Milodon Eng'g, Inc., 736 F.2d 989, 991 (4th Cir. 1984).

In order to be compatible with due process, courts have determined that "[w]here ... there is a federal statute that permits worldwide service of process, the relevant inquiry is whether the defendants have minimum contacts with the United States as a whole." United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, 976 F.Supp. 207, 210 (S.D.N.Y. 1997)(citing Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994)). In other words, where Congress has authorized nationwide or worldwide service of process, the relevant inquiry is not whether the defendant has "minimum contacts" with the forum state; rather, the relevant inquiry is whether the defendant has "minimum contacts" with the United States as a whole. See, e.g., Miller v. Asensio, 101 F.Supp.2d 395, 402 (D.S.C. 2000) (collecting

cases). This is commonly referred to as the "national contacts" test. See, e.g., Schrader v. Trucking Employees of N. Jersey Welfare Fund, Inc.-Pension Fund, 232 F.Supp.2d 560, 572 (M.D.N.C. 2002)(applying the "national contacts" test to the Employee Retirement Income Security Act, which provides for nationwide service of process).

The FCA "provides for worldwide service of process." United States ex rel. Vallejo v. Investronica, Inc., 2 F.Supp.2d 330, 334 (W.D.N.Y. 1998) (citing 31 U.S.C. § 3732(a)). Although the Fourth Circuit has not explicitly adopted the national contacts test as applied to the FCA, it has adopted the test in the context of the Employee Retirement Income Security Act ("ERISA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the Bankruptcy Act, each of which contains provisions for nationwide service of process. See Trustees of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 443-44 (4th Cir. 2015)(applying national contacts test where the claim was brought under ERISA); ESAB Group, Inc., 126 F.3d at 626 (same, under RICO); Hogue, 736 F.2d at 989 (same, under Bankruptcy Act). Moreover, district courts in this circuit and others have applied the national contacts test to cases brought under the FCA. See, e.g., United States v. Gwinn, No. 5:06cv267, 2008 WL 867927 (S.D.W.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

Va. Mar. 31, 2008)(applying 31 U.S.C. § 3732(a) and national contacts test to maintain personal jurisdiction in FCA action).

The Court discerns no reason why the Fourth Circuit would not adopt the national contacts test in the context of an FCA action such as this one and therefore concludes that the application of the "national contacts" test is appropriate in this case. The due process analysis focuses not on the defendants' contacts with West Virginia, but rather their contacts with the United States as a whole. See Gwinn, 2008 WL 867927, at *16 (finding that the proper forum on which to base a minimum contacts analysis in an FCA action is the United States); United States ex rel. Finks v. Huda, 205 F.R.D. 225, 227-28 (S.D.Ill. 2001)(same). Because Karner, Hobbs, and the Waibels are citizens and residents of the United States, they plainly have "minimum contacts with the United States as a whole" and, therefore, satisfy the "national contacts" test. Gwinn, 2008 WL 867927, at *17; Thistlethwaite, 976 F.Supp. at 210.

Of course, the due process inquiry also requires that the assertion of jurisdiction over the defendants does not offend the Fifth Amendment. ESAB Group, Inc., 126 F.3d at 627 ("The Fifth Amendment's Due Process Clause not only limits the extraterritorial scope of federal sovereign power, but also protects the liberty interests of individuals against unfair burden and inconvenience.").

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

In applying the national contacts test, "Fifth Amendment due process principles constrain the court only where asserting personal jurisdiction over the defendant 'would result in such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy evidenced by a nationwide service of process provision.'" Weese v. Savicorp, Inc., No. 2:13-CV-41, 2013 WL 6007499, at *3 (N.D.W. Va. Nov. 13, 2013)(citing Denny's, Inc. v. Cake, 364 F.3d 521, 524 n. 2 (4th Cir. 2004)).

Notably, defendants residing within the United States "must look primarily to federal venue requirements for protection from onerous litigation," because "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." Weese, 2013 WL 6007499, at *3 (quoting ESAB Group, 126 F.3d at 627) (internal citations and quotations omitted). Accordingly, unless the defendants can establish that litigating this case in West Virginia places an unfair burden or inconvenience upon them, the Court's exercise of personal jurisdiction in this case comports with the Due Process Clause of the Fifth Amendment.

The defendants have not put forth any evidence to demonstrate "extreme inconvenience or unfairness as would outweigh the congressionally articulated policy of allowing the assertion of in personam jurisdiction" in this Court. ESAB Group, 126 F.3d at 627.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

Although Karner asserts that "it would be inconvenient for [the Arizona defendants] to litigate in West Virginia," (Dkt. No. 101 at 6), the Court concludes that the inconvenience of litigating in another state, by itself, is not sufficient to outweigh congressional policy as expressed in a statute providing for personal jurisdiction through worldwide service of process.

Therefore, because the applicable national contacts test is satisfied, and because the defendants have established neither extreme inconvenience nor unfairness in this case, the Court concludes that it has personal jurisdiction over the defendants in this case and, therefore, **DENIES** Karner's motion to dismiss on that ground.

### 3. Failure to State a Claim

Finally, Karner moves to dismiss the case for failure to state a claim under Fed.R.Civ.P. 12(b)(6). He contends that dismissal is warranted because the amended complaint fails to meet the heightened specificity requirements of Rule 9(b), fails to allege that he "knowingly" submitted false claims, and fails to allege that he is "personally liable" for any violations of the FCA or AKA (Dkt. No. 101).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

### a.    Standard of Review

Fed. R. Civ. P. 12(b)(6) allows a defendant to move for dismissal on the grounds that a complaint does not "state a claim upon which relief can be granted." When reviewing the sufficiency of a complaint, a district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In order to be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

### b.   Particularity

Because the FCA is an anti-fraud statute, the complaint must comply with Rule 9(b) of the Federal Rules of Civil Procedure, which requires that the circumstances constituting fraud be stated with particularity. Harrison v. Westinghouse Savannah River Co. (Harrison I), 176 F.3d 776, 783-84 (4th Cir. 1999). The Fourth Circuit has held that this standard is met when "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby [ ]" are set forth in a complaint. Id. at 784 (internal citations and quotations omitted). Conclusory allegations will not satisfy the particularity requirement. Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989).

In cases where there are multiple defendants, as here, "[a] complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud." Adams v. NVR Homes,

Inc., 193 F.R.D. 243, 250 (D.Md. 2000)(citing Wang Labs., Inc. v. Burts, 612 F.Supp. 441, 445 (D.Md. 1984).

The Fourth Circuit has cautioned that, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison I, 176 F.3d at 784. Thus, "[t]he most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare a responsive pleading." Nat'l Mort'g Warehouse, LLC v. Trikeriotis, 201 F.Supp.2d 499, 505 (D.Md. 2002) (internal citations and quotations omitted).

Importantly, "in cases where there have been extensive allegations resulting in numerous instances of fraud, other courts have held that '[s]trict application of the requirements of Rule 9(b) may be relaxed....'" Gwinn, 2008 WL 867927, at *11 (quoting California, ex rel. Ven-A-Care of the Fla. Keys, Inc. v. Abbott Labs., Inc., 478 F.Supp.2d 164, 171-72 (D.Mass. 2007)("For instance, an alleged scheme of fraud may involve numerous transactions that occur over a long period of time, and pleading the precise specifics

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

with regard to every instance of fraudulent conduct may be impractical.")); United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F.Supp.2d 258, 268 (D.D.C. 2002) ("Additionally, where a complaint covers a multi-year period, Rule 9(b) may not require a detailed allegation of all facts supporting each and every instance of submission of a false claim.").

Here, as detailed above, the amended complaint contains specific allegations against the defendants, including Karner, and describes with particularity the alleged scheme to defraud NETL, specifying which awards and projects were involved, which defendants provided and received the kickbacks, the nature and amount of the alleged kickbacks, and the subcontracts, purchase orders, and invoice approvals that were obtained in exchange for the kickbacks.

For example, with respect to Karner specifically, the government alleges that Karner and a company he controlled were significantly involved with Hobbs and the NETL Projects, and that at least two companies controlled by Karner provided kickbacks to Hobbs. According to the amended complaint, and as discussed above, ETEC management and personnel, including Karner, routinely communicated with NETL personnel regarding various aspects of the CSNG Project, and they submitted invoices and claims for reimbursement directly to NETL-Morgantown (Dkt. No. 97 at ¶¶ 47-48).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

The amended complaint alleges that ETEC's employment of Hobbs' son constituted a kickback to induce Hobbs to aware purchase orders or subcontracts to ETEC and to approve invoices submitted by ETEC. Id. at ¶ 116. It is also alleged that, beginning in July 2007 and continuing into 2009, ETEC made direct and indirect payments totaling more than $75,000 to Hobbs, and that these payments constituted kickbacks to induce Hobbs to award purchase orders or subcontracts to ETEC and to approve invoices submitted by ETEC. Id. at ¶¶ 117-18. It is similarly alleged that, from August 2007 through December 2007, a company called Clarity Group, Inc. paid Hobbs at least $25,000. Id. at ¶¶ 121-22.

Therefore, as contemplated by the Fourth Circuit in Harrison, the Court is satisfied that the defendants have been made aware of the particular circumstances for which they will have to prepare a defense, and the government has substantial prediscovery evidence of those facts. Harrison I, 176 F.3d at 784. Given the allegations in the amended complaint, the government has clearly alleged the circumstances of the kickback scheme (i.e., that the defendants knowingly paid financial or in-kind kickbacks in order to secure purchase orders or subcontracts on NETL Projects, or accepted kickbacks), and has also sufficiently alleged the particular circumstances of the claims, including the parties involved, the

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

relevant time periods, the amount and nature of the kickbacks, and the subcontracts and purchase orders implicated. See United States v. Kensington Hosp., 760 F.Supp. 1120, 1125 (E.D.Pa. 1991)("Rule 9(b) was not intended to require a plaintiff to know every detail before he or she could plead fraud."). In addition, it is clear that the government has substantial prediscovery evidence of the relevant facts. The government has repeatedly alleged that NETL was the recipient of all the alleged false claims, and thus it is in possession of those claims and the information contained within them.

Finally, although Karner argues that the government has impermissibly grouped the defendants together in some of its allegations, the Court concludes that the amended complaint "does not run contrary to the cases that hold 'where there are multiple defendants, plaintiffs must allege all claims with particularity as to each defendant.'" Gwinn, 2008 WL 867927, at *12 (quoting Dealers Supply Co. v. Cheil Indus., 348 F.Supp.2d 579, 589 (M.D.N.C. 2004)). Here, the government has identified the defendants individually, including Karner, in many of its allegations. Moreover, where the complaint does not individually list the defendants and instead refers to "all of the defendants" or "the Individual Defendants," it is clear that the government is

UNITED STATES OF AMERICA v. HOBBS, ET AL.                    1:16CV236

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

indicating that all defendants participated in the conduct alleged.
For example, the government alleges that "[a]ll of the defendants
engaged in kickback schemes, directly or indirectly, and conspired
to provide or receive illegal inducements to enter into
subcontracts and purchase orders" (Dkt. No. 97 at ¶ 3).

Given the explicit reference to "all" defendants, it is clear
that this paragraph and similar paragraphs in the complaint
constitute specific allegations against each defendant named in the
case, including Karner. <u>See</u> <u>United States ex rel. Landsberg v.</u>
<u>Argentis Med., P.C.</u>, No. 03-1263, 2006 U.S. Dist. LEXIS 96621, at
*11-12 (W.D.Pa. Apr. 17, 2006)("Particularly in the context of
federal FCA cases, the courts have recognized the impracticality of
requiring the plaintiff to plead the facts of each individual
claim, particularly where the claims are numerous and extend over
the course of several years."); <u>United States ex rel. Thompson v.</u>
<u>Columbia/HCA Healthcare Corp.</u>, 20 F.Supp.2d 1017, 1049 (S.D.Tex.
1998)("The basic framework, procedures, the nature of fraudulent
scheme, and the financial arrangements and inducements among the
parties and physicians that give rise to Relator's belief that
fraud has occurred have been alleged with specificity; plaintiffs
are entitled to discovery before being required to list every false

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

claim, its dates, the individuals responsible, and why each patient was not eligible for Medicare.").

For these reasons, namely the sufficiently detailed factual allegations in the complaint, the Court concludes that the complaint meets the specificity requirements of Rule 9(b) and, therefore, **DENIES** Karner's motion to dismiss on this ground.

### c. "Knowingly"

Finally, Karner argues that the government has not alleged that he "knowingly" submitted false claims, or that he is "personally liable" for any of the violations alleged in the amended complaint (Dkt. No. 101).

As discussed at length, the FCA provides that "[a]ny person who [ ] knowingly <u>presents or causes to be presented</u>, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval[,]" or who "knowingly makes, <u>uses, or causes to be made or used</u>, a false record or statement to get a false or fraudulent claim paid or approved by the Government ... is liable to the United States Government for a civil penalty...." 31 U.S.C. §§ 3729(a)(emphasis added).

Thus, the plain language of the statute does not require an individual to actually submit the false claim in order to be liable. Rather, the Act "applies to anyone who knowingly assists in

causing the government to pay claims grounded in fraud, without regard to whether that person has direct contractual relations with the government." <u>United States ex rel. Riley v. St. Luke's Episcopal Hosp.</u>, 355 F.3d 370, 378 (5th Cir. 2004)(internal citations and quotations omitted). In other words, " 'a person need not be the one who actually submitted the claim forms in order to be liable.'" <u>Id.</u> (quoting <u>United States v. Mackby</u>, 261 F.3d 821, 827 (9th Cir. 2001)).

Here, Karner's argument that he never actually "submitted" a false claim is without merit because the government specifically alleges that the defendants, including Karner, "caused to be presented" false or fraudulent claims to NETL, and also "used" or "caused to be used" false records (namely invoices), which were material to false claims, by sending them, or causing them be sent, to NETL-Morgantown with the intent they be used to conceal kickbacks.

Furthermore, in the context of the FCA, the term "knowingly" means:

> [W]ith respect to information-(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

31 U.S.C. § 3729(b).

Here, the amended complaint alleges that the defendants, including Karner, "knowingly" paid significant kickbacks in order to secure subcontracts on NETL projects (Dkt. No. 97 at ¶ 3). It goes on to specifically allege that Karner and the other defendants "knowingly" made false statements, submitted false claims, and engaged in a fraudulent course of conduct to fraudulent obtain funds from the government. <u>Id.</u> at ¶ 98. Thus, the government has sufficiently alleged that the defendants "knowingly" caused fraudulent claims to be presented and "knowingly" caused a false record or statement to be used to get a false or fraudulent claim approved by the government. <u>See id.</u> at ¶¶ 209-10, 212-13.

Accordingly, because the government has stated valid claims for which relief can be granted, the Court **DENIES** the motion to dismiss.

**B.    Motion to Transfer**

Karner alternatively moves to transfer this action to the District of Arizona, arguing that it is the most convenient forum for this case. A defendant may move to transfer venue to a more convenient forum pursuant to 28 U.S.C. § 1404(a), which provides that:

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

> For the convenience of parties and witnesses, in the
> interest of justice, a district court may transfer any
> civil action to any other district or division where it
> might have been brought or to any district or division to
> which all parties have consented.

The parties do not dispute that the case could have been
brought in the District of Arizona, and, because the Karner, Hobbs,
and the Waibels reside in Arizona, 31 U.S.C. § 3732(a) permits the
case to have been brought in that district.

The relevant inquiry is whether a transfer would be for the
convenience of the parties and in the interests of justice. The
Court must consider four factors when deciding a motion to transfer
venue based on convenience. These include:

(1)  the weight accorded to plaintiff's choice of venue;

(2)  witness convenience and access;

(3)  convenience of the parties; and

(4)  the interest of justice.

Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing
Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015).

While it is within the sound discretion of the Court to grant
a change of venue, it is the "movants [that] typically bear the
burden of demonstrating that transfer is proper." Smith v.
Scottsdale Ins. Co., 2013 WL 6230455, at *2 (N.D.W.Va. Dec. 2,
2013); see also United States ex rel. Thomas v. Duke Univ., 2017 WL

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

1169734, at *2 (W.D.Va. Mar. 28, 2017). Generally, the Court should not disturb the plaintiff's choice of venue unless the other factors strongly favor it. See, e.g., Alphapharm, Inc. V. Purdue Pharma, L.P., 634 F. Supp. 2d 626, 623 (W.D.Va. 2009). Nor should the Court transfer venue when the result would simply be to transfer the inconvenience to the non-moving party. See, e.g., JTH Tax, Inc. V. Lee, 482 F. Supp. 2d 731, 738 (E.D.Va. 2007).

Here, Karner has not established that the balance weighs strongly in his favor, and the Court will not disturb the government's choice of venue. First, the government ostensibly filed the case in this district because, while the allegedly false claims "came from many places," including Arizona, Pennsylvania, and Florida, NETL-Morgantown was "always the recipient" of those claims and, therefore, was "always involved" in the events surrounding the presentment of false claims that form the basis of this FCA action (Dkt. No. Response at 18). The Court gives the government's choice considerable weight because it neither "chose[] a foreign forum or one bearing little or no relation to the cause of action." Reynolds Metals Co. FMALI, Inc., 862 F.Supp 1496, 1501 (E.D.Va. 1994)(internal citations omitted).

With respect to the convenience factors, while it is true, as Karner argues, that he and several other defendants are residents

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

of Arizona, just as many, if not more, of the remaining defendants are located in places other than Arizona. Moreover, as pointed out by the government, the non-Arizona parties are located in various places, including Delaware and Pennsylvania, which are much closer to the Northern District of West Virginia than they are to Arizona. And, although a number of potential witnesses, including APS personnel, are likely to be from Arizona, it is equally likely that a number of witnesses, including NETL personnel, are likely to be from West Virginia, in as much as they reside in or near, and work in, the Northern District. The government further avers that additional witnesses will likely be found in Pennsylvania, Delaware, Florida, and Massachusetts. It is clear that, when weighing the relative convenience between the government and its potential witnesses, and the defendants and their potential witnesses, the factors do not weigh heavily in favor of transfer.

Because a transfer would merely shift the inconvenience from the Arizona defendants to the government, the Court declines to transfer venue this case and **DENIES** the motion.

### III. CONCLUSION

For the reasons discussed, the Court:

1.  **GRANTS** defendant Hobbs' motion to join defendant Karner's motion (Dkt. No. 105); and

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION TO TRANSFER [DKT. NO. 101]**

>    2.    **DENIES** Karner's motion to dismiss or, in the alternative,
>
>          motion to transfer (Dkt. No. 101).

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order

to the <u>pro se</u> parties and counsel of record.

DATED: March 16, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
